## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

RICKY GRAHAM,

     *Plaintiff*,

     v.

NATIONAL     RAILROAD     PASSENGER
CORPORATION d/b/a AMTRAK,

     *Defendant*.

No. 3:18cv1788(MPS)

## RULING ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Ricky Graham brings this negligence action against National Railroad Passenger Corporation d/b/a Amtrak ("Amtrak") alleging that Amtrak is liable for property damage to his shed.  Amtrak moves for summary judgment, arguing that Graham's failure to disclose an expert witness means that he cannot prove his claim that ground vibrations from Amtrak's "tamping" work on a nearby railroad track caused cracks in his shed.  (ECF No. 24 at 6.)  Amtrak also argues that even if expert testimony is not required, summary judgment is warranted because Graham fails to proffer sufficient evidence from which a reasonable juror could infer causation.  For the reasons discussed below, the motion for summary judgment is DENIED.

## I.     Factual Background

The following facts, which are taken from the parties' Local Rule 56(a) Statements and the exhibits, are undisputed unless otherwise indicated.

Graham owns a home in Meriden, Connecticut.  (ECF No. 24-2 at ¶ 1; ECF No. 29 at ¶ 1.)[1] Behind the house is a railroad line operated by Amtrak.  (ECF No. 28-3 at 50.)  In 2007, Graham

---

[1] Citations are to the CM/ECF system's assignment of page numbers rather than counsel's assignment, to the extent that the two paginations differ.

hired a construction company to build a two-story shed behind his house.  (ECF No. 24-2 at ¶ 2; ECF No. 29 at ¶ 2.)  The structure is 16 feet by 24 feet with an 8 foot by 24 foot porch and has electricity, heat, and cable.   (ECF No. 28-3 at 17, 40, 51.)   At his deposition, Graham "guesstimated" that the railroad line is located approximately 50 feet behind the shed.  (ECF No. 28-3 at 49.)

Between September 16, 2017 and October 2, 2017, Amtrak performed work on the railroad track behind Graham's shed.  (ECF No. 24-2 at ¶¶ 4,6; ECF No. 29 at ¶¶4, 6.)  This work included track realignment with a tamping machine and ballast distribution.  (ECF No. 24-2 at ¶ 6; ECF No. 29 at ¶ 6.)

Graham said he saw workers "tamping the rail" behind his house and could "feel the vibration."  (ECF No. 28-3 at 56, 66.)  He described the tamping as "[h]ydraulics, it would go up and down in a tamping motion."  (*Id.* at 56-57.)  While in his living room, the vibrations caused the water in his glass to shake.  (*Id.* at 55, 65.)  He further testified that "upon feeling the vibrations," he inspected the shed, noticed cracks in the foundation, and "e-mailed Amtrak." (ECF No. 24-2 at ¶ 8; ECF No. 29 at 8; ECF No. 28-3 at 57-58.)  According to Graham, these cracks were not there previously.  (ECF No. 28-3 at 39.)  He said he went "around the building twice a week" while cutting the grass, "would [have] notice[d] them if they were there beforehand," and did not see the cracks before Amtrak performed the tamping work.  (ECF No. 28-3 at 39.)

## II.   LEGAL STANDARD

Summary judgment is appropriate only when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "In making that determination, a court must view the evidence in the light most favorable to the opposing party," *Tolan v. Cotton*, 572 U.S. 650, 657 (2014)(internal

quotation marks and citations omitted), and may grant summary judgment only "when no reasonable juror could find in favor of the non-moving party … on the basis of the undisputed facts." *Hines v. Conn. Dep't of Correction*, 723 Fed Appx. 76, 77 (May 25, 2018).  "A fact is material when it might affect the outcome of the suit under governing law," and "an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks and citations omitted).  The moving party bears the burden "of showing that no genuine factual dispute exists ..., and in assessing the record to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences" in favor of the non-moving party. *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995).

**III.    Discussion**

A.    <u>Fed. R. Civ. P. 56(d)</u>

Graham argues in his opposition that Amtrak's motion should be denied because it is premature.[2]  (ECF No. 28 at 1.)  He maintains that "the facts are incomplete" and that he "anticipates the production" of discovery responses "related to the allegations of the complaint." (ECF No. 28 at 2.)

Rule 56(d)[3] of the Federal Rules of Civil Procedure provides, in relevant part, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts

---

[2] In its reply brief, Amtrak moves to strike Graham's opposition on the grounds that it is untimely. (ECF No. 30 at 3.)  Graham's opposition brief was due February 7, 2020 (ECF No. 25) but not filed until February 12, 2020.  (ECF No. 28.)  Although I do not countenance Graham's tardiness, I decline to strike his memorandum because motions to strike are disfavored.  *Azikiwe v. Nigeria Airways Ltd.*, No. CV–03–6387 FBCLP, 2006 WL 2224450, at *1 (E.D.N.Y. July 31, 2006).

[3] Rule 56(d) provides:

essential to justify its opposition, the court may: (1) defer considering the motion or deny it. . . ."
"Rule 56(d) expressly requires the nonmoving party who seeks further discovery in these
circumstances to make a 'show[ing] by affidavit or declaration' of the reasons for needing the
relief." *Kazolias v. IBEWLU 363*, 806 F.3d 45, 54 (2d Cir. 2015). The affidavit or declaration
must show "(1) what facts are sought to resist the motion and how they are to be obtained, (2) how
those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant
has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Miller v.
Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir. 2003)(internal quotation marks and
citations omitted). A "bare assertion that the evidence supporting plaintiff's allegations is in the
hands of the moving party is insufficient to justify the denial of summary judgment." *Crye
Precision LLC v. Duro Textiles, LLC*, 689 F. App'x 104, 108 (2d Cir. 2017) (quoting *In re Dana
Corp.*, 574 F.3d 129, 149 (2d Cir. 2009)). "Even where a Rule 56[(d)] motion is properly
supported, a district court may refuse to allow additional discovery 'if it deems the request to be
based on speculation as to what potentially could be discovered.'" *Nat'l Union Fire Ins. Co. of
Pittsburgh v. Stroh Cos.*, 265 F.3d 97, 117 (2d Cir. 2001) (quoting *Paddington Partners v.
Bouchard*, 34 F.3d 1132, 1138 (2d Cir.1994)).

Here, Graham has not submitted any affidavit or declaration addressing his need for
additional discovery, and thus is not entitled to relief under Rule 56(d). *See 1077 Madison St,
LLC v. Daniels*, 954 F.3d 460, 464 (2d Cir. 2020)(failure to file an affidavit under Rule 56(d) "is

---

When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit
or declaration that, for specified reasons, it cannot present facts essential to justify
its opposition, the court may:
(1) defer considering the motion or deny it;
(2) allow time to obtain affidavits or declarations or to take discovery; or
(3) issue any other appropriate order.

itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.")(internal quotation marks and citation omitted).

Moreover, Graham fails to show how the discovery he seeks - Amtrak's claims handlings policies and procedures and whether notice was given to residents of property adjacent to the track work at issue - would yield additional evidence as to the issue of causation, the sole issue raised in Amtrak's motion.  The only discovery arguably relevant to causation is his request for studies, analyses, or reports Amtrak prepared regarding the track work at issue.  And as to that, Amtrak responds that it has no responsive documents.  See ECF No. 30-3 at 1, Sullivan Aff. (Amtrak "has not conducted any studies or analyses, nor created any reports, regarding the vibrations associated with the track maintenance involved in this lawsuit.")  Graham has not demonstrated that he is entitled to relief under Rule 56(d).

## B.    Expert Testimony

Amtrak argues that as a matter of law, Graham cannot demonstrate causation because he has failed to disclose an expert.[4]  (ECF No. 24-1 at 6.)  I disagree.

Under Connecticut law, "[t]he essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury."  *Doe v. Saint Francis Hosp. & Med. Ctr.*, 309 Conn. 146, 174 (2013) (quoting *Ryan Transp., Inc. v. M & G Assocs.*, 266 Conn. 520, 525 (2003)).  "The causal relation between the defendant's wrongful conduct and the plaintiff's injuries must be established in order for the plaintiff to recover damages."  *Wu v. Town of Fairfield*, 204 Conn. 435, 438 (1987).  "[A] plaintiff must establish that the defendant's conduct legally caused the injuries . . . . The first component of legal cause is causation in fact. . . . The test for cause

---

[4] Amtrak's argument is directed solely at the element of causation. It does not argue that expert testimony is required to prove the standard of care.

in fact is, simply, would the injury have occurred were it not for the actor's conduct." *Winn v. Posades*, 281 Conn. 50, 56-57 (2007)(internal quotation marks omitted). "The second component of legal cause is proximate cause.... [T]he test of proximate cause is whether the defendant's conduct is a substantial factor in bringing about the plaintiff's injuries.... Further, it is the plaintiff who bears the burden to prove an unbroken sequence of events that tied his injuries to the [defendants' conduct]...." *Id.* (internal quotation marks omitted). "The existence of the proximate cause of an injury is determined by looking from the injury to the negligent act complained of for the necessary causal connection.... This causal connection must be based upon more than conjecture and surmise." *Id.* (internal quotation marks omitted). "No matter how negligent a party may have been, if his negligent act bears no relation to the injury, it is not actionable." *Gordon v. Glass*, 66 Conn. App. 852, 856 (2001)(internal quotation marks omitted).

The Supreme Court of Connecticut has held that, under certain circumstances, expert testimony is required to establish causation. *Aspiazu v. Orgera*, 205 Conn. 623, 630 (1987). "Expert opinions concerning scientific, technical or other specialized knowledge may be necessary to assist the trier of fact in understanding the evidence or in determining a fact in issue." *State v. Buhl*, 321 Conn. 688, 700 (2016). "Such testimony is required when the question involved goes beyond the field of ordinary knowledge and experience of the trier of fact. . . .  Conversely, the trier of fact need not close its eyes to matters of common knowledge solely because the evidence includes no expert testimony on those matters." *Bagley v. Adel Wiggins Grp.*, 327 Conn. 89, 103 (2017) (internal quotation marks footnote, citation, and alterations omitted). "Whether expert testimony is required in a particular case is determined on a case-by-case basis and its necessity is dependent on whether the issues are of sufficient complexity to warrant the use of the testimony as assistance to the . . . [trier of fact]." *Id.*

Although the Connecticut Supreme Court has not addressed whether expert testimony is required to prove that tamping can cause ground vibrations that may damage nearby structures, it has addressed a similar issue in the context of blasting.  In *King v. New Haven Trap Rock Co.*, 146 Conn. 482 (1959), the plaintiffs alleged that the defendant was liable for damage to the plaintiffs' home as a result of vibrations from a blast it set off.  One of the plaintiffs testified that almost immediately after the blast "she saw a crack in the living room wall, which had been previously undamaged, and that the water service, which previously had worked properly, was diminished." *Id.* at 484.  The Connecticut Supreme Court concluded that "expert testimony was not, as matter of law, essential" to prove that the damage to the plaintiffs' property was caused by vibration from the defendant's blasting.  *Id.* at 482.

The Maine Supreme Court reached a similar conclusion in *Dyer v. Maine Drilling & Blasting, Inc.*, 984 A.2d 210 (Me. 2009).  There the defendant notified the plaintiffs of its intent to conduct blasting near the plaintiffs' property and surveyed the home prior to the blast.  The plaintiff testified that she felt the house shake from the blasts, which were approximately 100 feet from the house.  After the blasting work, the plaintiff's sons observed cracks in the basement floor.  The trial court held that the record was insufficient to generate a triable claim that the defendant's conduct was a cause of damage without an expert opinion as to causation.  On appeal, the Maine Supreme Court reversed, based in part on its determination that expert testimony was not necessary to prove causation in a blasting damages case.  *Id.* at 220.  The court noted that there was evidence concerning the condition of the premises before the blasting, at least 2 blasts exceeded the Bureau of Mines' threshold, the plaintiff testified that she felt the "whole house shake," and after the blasts, the plaintiff noticed changes in the condition of the property.  *Id.*  The Court held that a "fact-finder could infer that these significant changes, observed over a short period of time . . ., were not likely

to have been caused by normal settling." *Id.   See also Hiser v. XTO Energy, Inc.*, 2012 WL 3542009 (E.D. Ark. Aug. 14, 2012)(no expert testimony required as to causation in negligence claim where plaintiff alleged vibrations from defendant's drilling operation caused damage to his property, which was adjacent to the worksite,); *Stathers v. Garrard Cty. Bd. of Educ.*, 405 S.W.3d 473, 480 (Ky. Ct. App. 2012)(no requirement that a plaintiff in a blasting case produce expert testimony to establish causation).

To be sure, this is not a blasting case, and blasting cases often involve theories of strict liability rather than negligence. *See, e.g., Stathers*, 405 S.W.3d at 479.  But that distinction is immaterial here, because strict liability claims, like negligence claims, require proof of causation – the only issue raised by Amtrak's motion. *See, e.g., Green v. Ensign Bickford Co.*, 25 Conn. App. 479, 488-89 (1991) (in strict liability case, discussing whether testimony of plaintiff's expert on the issue of proximate cause was improperly excluded).[5] And like this case, the blasting context involves a claim that ground vibrations from nearby industrial work caused damage to property. Consequently, I draw upon these cases to conclude that the factfinder in this case would not require special training or expertise to determine whether vibrations and shaking emanating from the defendant's railroad work were the cause of damage to neighboring structures.

C.    Sufficiency of the Evidence

Amtrak next argues that even if expert testimony is not required, it is still entitled to summary judgment because there is insufficient evidence as to causation.  I disagree.

---

[5]  The *Green* court acknowledged that, in *King*, the Connecticut Supreme Court had held that "expert testimony is not required to prove causation in a blasting case," but added that "[*King*] does not bar a plaintiff from using such testimony to establish causation." 25 Conn. App. at 488 n.3.

Viewing the evidence in the light most favorable to the plaintiff, and drawing all reasonable inferences in his favor, I find that Graham has produced sufficient evidence on the issue of causation to survive Amtrak's motion for summary judgment. The evidence Graham proffers here is analogous to that in *Dyer v. Maine Drilling & Blasting, Inc.,* 984 A.2d 210 (Me. 2009). First, as noted above, Graham was familiar with the condition of the shed's foundation before the railroad work. Specifically, he testified that he mowed the grass around the shed 2 to 3 times a week and did not observe any cracks prior to the tamping work. (ECF No. 28-3 at 39.) There also is evidence that the defendant used a tamping machine for two weeks on the railroad line located just 50 feet behind the plaintiff's shed and that the machine caused vibrations. Graham felt the vibrations in his house (which was further from the railroad line than the shed is). (ECF No. 24-2 at ¶ 7; ECF No. 29 at ¶ 7; ECF No. 28-3 at 55.) He explained that while in his home, the water in his glass shook from the vibrations. (ECF No. 28-3 at 55.) Graham then examined the shed and observed cracks in the foundation that were not there before. (ECF No. 28-3 at 55.) When the record is examined in the light most favorable to the plaintiff, a genuine issue of fact exists as to whether the defendant's maintenance work was the proximate cause of the damage.

## IV.  Conclusion

For these reasons, the defendant's motion for summary judgment (ECF No. 24) is denied.

IT IS SO ORDERED.

_____/s/_____

Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
    July 1, 2020